UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DONALD HAFF HALLOCK, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>CHARLES LOCKETT, )<br>)<br>Respondent. ) | Cause No. 2:12-cv-206-WTL-DKL |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND RELATED MATTERS**

This cause is before the Court on Petitioner David Haff Hallock's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. Hallock's motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons set forth below. The Court further **DENIES** Hallock's requests for an evidentiary hearing and for the Court to appoint counsel.

## I.   BACKGROUND

Hallock's criminal history, which includes several escapes from prison, is extensive. He was first sentenced on June 18, 1962, by the United States District Court ("USDC") for the Southern District of Ohio to twenty years' imprisonment for bank robbery ("Federal Sentence One"). Approximately nine years later, on May 19, 1971, Hallock was granted parole by the United States Parole Commission. At that time, he had 4,037 days remaining on his sentence. On September 28, 1971, however, Hallock's parole was revoked, and he returned to federal custody to complete the balance of his sentence.

On March 17, 1972, while in federal custody, Hallock was sentenced by the USDC for the Southern District of Indiana to five years' imprisonment for bank robbery ("Federal Sentence

Two"). The Court ordered the term of imprisonment to run consecutive to his prior conviction. On June 30, 1975, however, Hallock was once again granted parole. At that time, he had 4,486 days remaining on his combined sentences. Less than a year later, on February 15, 1976, Hallock's parole was again revoked, and he returned to prison to serve the remainder of his sentences.

On July 14, 1976, while in federal custody, Hallock was sentenced by the USDC for the Eastern District of Louisiana to twenty-five years' imprisonment for bank robbery ("Federal Sentence Three"). Hallock, however, escaped from federal custody on January 2, 1979. He was arrested by state authorities in South Carolina on June 25, 1979, for assault and battery with intent to kill and illegal possession of a firearm. He was sentenced in South Carolina state court on November 7, 1979, to forty-one years' imprisonment. Although he had a significant amount of time remaining on his federal sentences, Hallock was remanded to the South Carolina Department of Corrections ("DOC") to serve his state sentence.

On January 25, 1980, while in state custody, Hallock was sentenced by the USDC for the Middle District of North Carolina to fourteen years' imprisonment for bank robbery, conveying a weapon from place to place within a penitentiary, and escape ("Federal Sentence Four"). The fourteen year sentence was scheduled "to commence at the expiration of such prison sentences as he [was then] under or order[ed] to serve." Melick Aff. at ¶ 9, Dkt. No. 10-1.

On August 25, 1992, Hallock escaped from prison in South Carolina. He was arrested just weeks later on September 9, 1992, after he committed an armed robbery in Georgia. Although he was initially arrested by local law enforcement authorities and charged in state court, he was transferred to federal custody on December 30, 1992, to face charges of interference with commerce by robbery, possession of a firearm in relation to a crime of

violence, and being a felon in possession of a firearm. Hallock's state-court charges were dismissed on January 7, 1993. On June 18, 1993, however, Hallock pled guilty and was sentenced by the USDC for the Northern District of Georgia to 293 months' imprisonment (approximately 24 years) ("Federal Sentence Five"). The Court ordered that the sentence run consecutive to his previous state and federal sentences. Although Hallock was initially remanded to the federal Bureau of Prisons ("BOP"), he was transferred back to South Carolina to serve the remainder of his state-court sentence on July 16, 1993.

Hallock was released from the South Carolina DOC to the custody of the U.S. Marshals Service on June 23, 2003. He has been in federal custody since that date. According to the BOP, Hallock's projected release date is December 10, 2037.

## II.     STANDARD

A federal court may issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3) if it finds the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." Hallock seeks such a writ from this Court.

## III.     DISCUSSION

Hallock argues that "he has been forced to serve two of his federal sentences on an 'installment basis'" in violation of 18 U.S.C. §§ 3585(a) and 3621(c) and the Interstate Agreement on Detainers Act ("IAD"). Hallock's Pet. at 1, Dkt. No. 1. Specifically, Hallock contends that he "should never have been given over to the custody of the state of South Carolina until he had completed service of his federal sentence with the BOP." *Id.* at 4. Because he was forced to serve his sentence in South Carolina while his federal sentences remained pending, Hallock asks the Court to give him "credit for his original June 8, 1962 sentence [i.e., Federal Sentence One] to reflect said sentence's completion when the federal BOP relinquished primary

custody" to the South Carolina DOC in 1979. *Id.* at 5. He also asks that the Court give him "credit for his June 18, 1993 sentence in the federal BOP [i.e., Federal Sentence Five,] which commenced on his formal entry into USP Atlanta [on] July 7, 1993 and . . . discharged when [the] federal BOP relinquished primary custody . . . again to the state of South Carolina" on July 16, 1993. *Id.* The Court is unable to grant Hallock's requests.

As the Government notes, "Hallock appears to [argue] that because the United States had primary jurisdiction over him[,] his federal sentence could not be interrupted for service of a state sentence." Government's Resp. at 6, Dkt. No. 10. This argument is entirely without merit.

> [W]here an individual has committed crimes against two sovereigns, the issue of who has jurisdiction over him is a matter of comity between the two sovereigns. *Jeter v. Keohane,* 739 F.2d 257, 258 (7th Cir. 1984) (citing *Ponzi v. Fessenden*, 258 U.S. 254, 262, 42 S.Ct. 309, 66 L.Ed. 607 (1922)). As to the federal government, the authority to exercise this comity rests with the Attorney General, and an individual may not complain about her decisions. *See Poland v. Stewart*, 117 F.3d 1094, 1098 (9th Cir. 1997) ("It is the Attorney General's job to exercise the authority of the United States over federal prisoners. If she chooses to leave [an individual] in the custody of the State ..., neither [the individual] nor this court is in a position to say she lacks the authority under the Constitution to do so."); *see also Bowman v. Wilson*, 672 F.2d 1145, 1154 (3d Cir. 1982) ("'[t]he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner.'") (quoting *Derengowski v. United States,* 377 F.2d 223, 224 (8th Cir. 1967)) (alteration by quoting court).

*Jake v. Herschberger*, 173 F.3d 1059, 1065 (7th Cir. 1999).

Moreover, the IAD is inapplicable to Hallock's claims. The IAD

> was enacted and adopted by the states and the U.S. Government because detainers potentially restrict, circumscribe, or disrupt the activities, including rehabilitation activities, of prisoners within the 'sending' state's prison. . . . Where such detainers are lodged, the Act's pertinent provision disallows shuttling of prisoners between jurisdictions just to suit the [BOP].

*Flick v. Blevins*, 887 F.2d 778, 781 (7th Cir. 1989) (citations omitted). The anti-shuttling provision of the IAD requires that a trial be "'had . . . prior to the prisoner's being returned to the

original place of imprisonment'; otherwise the charges 'shall' be dismissed with prejudice." *Alabama v. Bozeman*, 533 U.S. 146, 150 (2001) (quoting 18 U.S.C.App. § 2, Art. IV(e)).

Hallock's federal sentences were initially interrupted because he escaped—not because the federal government "shuttled" him between jurisdictions. After his second escape, Hallock faced charges in the USDC for the Northern District of Georgia. He was transferred back to South Carolina to serve the remainder of his state-court sentence after he was sentenced by the federal court (and after the State of Georgia dismissed its charges against Hallock). At that time, no charges remained pending. Under these circumstances, the Act is not implicated. Thus, the BOP (via its authority from the Attorney General pursuant to 28 C.F.R. § 0.96) was within its right to remand Hallock to the custody of the South Carolina DOC even though he had not completed his federal sentences.

To the extent Hallock argues that he is entitled to credit against his federal sentences for the time he served in South Carolina and/or while he was on escape status, his argument also fails. The computation of federal sentences and credits is governed by 18 U.S.C. § 3585. The statute provides as follows:

> (a) **Commencement of Sentence.**—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) **Credit for Prior Custody.**—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

Hallock's incarceration in South Carolina was unrelated to any of his federal sentences and was specifically credited against his sentence in South Carolina. Thus, under the clear language of the statute, Hallock is not entitled to credit against his federal sentences for the years he spent in the South Carolina DOC. *See Flick*, 887 F.2d at 782 (petitioner not entitled to credit for time spent in state custody on unrelated state conviction even though he had not completed federal sentence). Additionally, during Hallock's periods of escape he was not in "official detention" such that he could receive any credit against his federal sentences. Accordingly, Hallock is not entitled to the specific relief he requests, i.e., credit for Federal Sentences One and Five.

## IV.   CONCLUSION

For the foregoing reasons, Hallock's petition for writ of habeas corpus under 28 U.S.C. § 2241 is **DENIED**. The Court further **DENIES** Hallock's requests for an evidentiary hearing and for the Court to appoint counsel.

SO ORDERED: 10/03/2013

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by U.S. Mail to:**

**Donald Haff Hallock**
**98895-131**
**Terre Haute U.S. Penitentiary**
**Inmate Mail/Parcels**
**P.O. Box 33**
**Terre Haute, IN 47808**

Copies to all counsel of record via electronic communication.